IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-01330-MSK-MJW

JOHN TORRES,

    Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, and
CYNTHIA DAVIS,

    Defendants.

_____

**OPINION AND ORDER GRANTING MOTION TO DISMISS AND DENYING
MOTION TO REMAND**
_____

**THIS MATTER** comes before the Court pursuant to Defendant American Family Mutual Ins. Co.'s ("AFM") Motion to Dismiss, or In the Alternative, Motion for Summary Judgment **(# 8)**, to which no directly responsive papers were filed; the Plaintiff's Motion to Remand **(# 13)**, AFM's response **(# 19)**, and the Plaintiff's reply **(# 27)**; and the Plaintiff's Motion to Strike **(# 17)** AFM's Motion to Dismiss, AFM's response **(# 24)**, and the Plaintiff's reply **(# 28)**.

## FACTS

The Plaintiff is the holder of an auto insurance policy issued by AFM, and had exhausted the basic Personal Injury Protection ("PIP") benefits under the policy following an auto accident in 1998. The Plaintiff commenced this action on or about June 6, 2007, by filing a Complaint **(#2)** in the Colorado District Court for Boulder County. The Complaint named only AFM as a Defendant, and asserted four claims for relief arising out of AFM's failure to offer the Plaintiff

1

enhanced PIP benefits as required by then-C.R.S. § 10-4-710. Specifically, the Complaint alleged claims for: (i) declaratory relief and reformation of the policy to include enhanced PIP benefits, as provided for in cases such as *Brennan v. Farmers Alliance Mutual Ins. Co.*, 961 P.3d 550 (Colo. App. 1998); (ii) breach of contract, based on AFM's failure to pay enhanced PIP benefits under the now-reformed contract; (iii) willful failure to timely pay enhanced PIP benefits under the reformed contract, in violation of C.R.S. § 10-4-708; and (iv) breach of the implied covenant of good faith and fair dealing, based on AFM's failure to offer him enhanced PIP coverage and pay such enhanced benefits upon the expiration of his basic coverage.

On June 25, 2007, at 11:05 a.m., the Plaintiff filed an Amended Complaint, *Docket* # 7, Ex. 1, as of right pursuant to C.R.C.P. 15(a). The Amended Complaint maintained all of the claims initially asserted by the Plaintiff against AFM, and added a new claim against a new Defendant, Cynthia Davis. The nature of the Plaintiff's claim against Defendant Davis is somewhat unclear; the claim is designated as being for "Breach of Duty of Reasonable Care, Good Faith, and Fair Dealing," suggesting that it has both a tort and contractual provenance. The factual allegations of the claim assert that Defendant Davis was a Claims Representative acting as an agent for AFM in handling the Plaintiff's insurance claim arising from his accident. The Plaintiff contends that, because of a "quasi-fiduciary" relationship existing between himself and AFM, Defendant Davis, as AFM's agent, "had a special relationship" with the Plaintiff and owed him a "duty to provide him with the information necessary for him to properly obtain the direct benefits due him under the subject policy." He contends that Defendant Davis never advised him of his potential entitlement to enhanced PIP coverage, despite knowing that he had exceeded the limits of his basic PIP coverage. The Plaintiff further asserts that in 2000, AFM "requested that

2

its claims representatives determine who among its existing PIP recipients may be entitled to additional PIP benefits," and that Defendant Davis, despite knowing that the Plaintiff was among such recipients, did not advise the Plaintiff of AFM's request or advise AFM of the Plaintiff's potential eligibility. The Plaintiff asserts that this conduct "constitutes a violation of her obligation to deal with [the Plaintiff] with reasonable care, fairly, and in good faith."

Approximately three hours after the Plaintiff filed the Amended Complaint – and apparently without actual notice of its filing – AFM filed a Notice of Removal **(# 1)**, removing the case to this Court on the basis of diversity of citizenship under 28 U.S.C. § 1332. The Plaintiff, being a citizen of Colorado, is diverse from AFM, a citizen of Wisconsin, but is not diverse from Defendant Davis, who is also a citizen of Colorado. Realizing that the presence of Defendant Davis would destroy federal diversity jurisdiction and compel remand of this action to state court, AFM then filed the instant Motion to Dismiss, or in the alternative, Motion for Summary Judgment **(# 8)**, seeking dismissal of the claim against Defendant Davis. Specifically, AFM argued that Defendant Davis was fraudulently joined because: (i) as a factual matter, Defendant Davis was not involved in handling the Plaintiff's PIP claim, but rather, only processed a separate claim by the Plaintiff for underinsured motorist benefits; and (ii) as a matter of law, claims representatives generally do not owe special duties to policyholders whose claims they adjust, *citing Cary v. United of Omaha Life Ins. Co,*, 68 P.3d 462 (Colo. 2003), and the Plaintiff had not alleged facts showing that Defendant Davis accepted any special duty to the Plaintiff.

The Plaintiff did not directly respond to the Motion to Dismiss. Instead, he filed a Motion to Remand **(# 13)**, arguing that the filing of the Amended Complaint operated to destroy any diversity of citizenship, and thus, AFM's Notice of Removal was improper. The Plaintiff did not

3

address the arguments in AFM's Motion to Dismiss, stating that "[w]hatever the eventual merits of the Motion to Dismiss, the allegations in the amended complaint prohibit the removal of this case." A few days later, the Plaintiff filed a Motion to Strike **(# 17)** AFM's Motion to Dismiss, which also purported to be the Plaintiff's response to the motion. The Plaintiff argued that: (i) AFM's Motion to Dismiss was premature,[1] insofar as the Plaintiff was entitled to 30 days from the date of removal to seek remand, and thus, the Court "should first rule on the Motion For Remand" and "dismiss[ ] the Motion to Dismiss as premature"; (ii) that, to the extent that the Court treats AFM's motion as being one for summary judgment, the Plaintiff should be given an opportunity to conduct discovery pursuant to Fed. R. Civ. P. 56(f); and (iii) that the Plaintiff has alleged facts that give rise to a special relationship between Defendant Davis and himself.

## ANALYSIS

### A. Standard of Review

At bottom, the parties' competing motions present the question of whether the claim against Defendant Davis should be dismissed as fraudulently joined.

Although complete diversity of citizenship must exist before subject-matter jurisdiction will vest in this Court, a party cannot prevent the removal of a case on diversity grounds by fraudulently joining a resident defendant having no real connection to the controversy. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). The joinder of a resident defendant against whom no viable cause of action is stated allows the Court to "pierce the pleadings" and disregard the citizenship of the improperly joined party for purposes of determining the existence of federal jurisdiction. *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir.1964). The Court may

---

[1]The Plaintiff cited no authority for his request that this "premature" motion be stricken.

4

consider "the entire record" to determine the viability of the claims asserted against the resident defendant, but it must be careful not to "pre-try [ ] doubtful issues of fact to determine removability." *Id.*

The party asserting the existence of federal jurisdiction- here, AFM - bears the burden of establishing that such jurisdiction exists. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir.2001). To establish fraudulent joinder, AFM must show that the Plaintiff has no possibility of recovery against Defendant Davis. *Frontier Airlines, Inc. v. United Air Lines, Inc.*, 758 F.Supp. 1399, 1403 (D.Colo.1989). In other words, AFM must show that the Plaintiff clearly cannot maintain the asserted claims against Defendant Davis. *Id*. at 1404. Although the Court may search beyond the four corners of the pleadings in determining whether joinder was improper, *Dodd*, 329 F.2d at 85, it must nevertheless resolve any doubts in favor of the Plaintiff and against the exercise of federal jurisdiction. *Martin*, 251 F.3d at 1289-90.

**B. Claim against Defendant Davis**

The ultimate question presented by AFM's Motion to Dismiss is whether Colorado law recognizes a claim by an insured against a claims representative for failing to advise the insured of their right – whether it be due to operation of law or a voluntary offer by the insurer – to more generous benefits.

In *Scott Wetzel Services, Inc. v. Johnson*, 821 P.2d 804, 809-10 (Colo. 1991), the Colorado Supreme Court addressed the question of whether "an independent claims adjusting firm owes a duty of good faith and fair dealing to an injury claimant in investigating and processing a worker's compensation claim in the absence of contractual privity with the claimant." It began by observing that an insurer owes a tort-like duty of a "quasi-fiduciary"

5

nature to exercise good faith in its dealings with the insured. *Id.* It further found that, in that case, the claims administrator performed services, including investigating claims, making eligibility determinations, and paying medical bills, that are required and governed by the Worker's Compensation statute. *Id.* at 812. Finding that this was the equivalent of carrying out the insurer's duties, the court concluded that the administrator also owed a duty of good faith and fair dealing to the insured. *Id.*

In *Cary,* the Colorado Supreme Court addressed the question again, albeit this time outside the peculiar circumstances of the Worker's Compensation realm. The Supreme Court in *Cary* described the question presented as "Whether third-party administrators of health insurance plans owe the insureds any duty to process claims and determine coverage in a reasonable or good faith manner, and hence, whether they can be liable for either bad faith or negligence in the handling of those claims." 68 P.3d at 463 n.1. In *Cary*, a self-insured entity retained the defendants to administer its health insurance plan. The defendants were empowered to establish claim handling procedures, verify claimant eligibility, process claims, distribute claim payments, and so on. *Id.* at 464. The plaintiff, an insured under the plan, sued the defendant claims administrator, alleging bad faith breach of contract arising out of a denial of benefits. *Id.* at 464-65. The trial court granted summary judgment to the claims administrator, finding that no contract existed between the insured and the claims administrator, and thus, no basis for a bad faith breach of contract claim. *Id.*

The Colorado Supreme Court reversed. First, it emphasized that, because of the "special relationship" between insurer and insured, the insurer owes a tort-like duty of good faith and fair dealing to its customers. *Id.* at 466. The court went on to explain, however, that, in typical

6

situations, that duty ran only between insurer and insured, and did not extend to actions by the insurer's agents, including its claims processing agents. *Id.* The Court explained that "[i]n the typical case, the insured is adequately protected by the non-delegable duty the law imposes on the insurer." *Id.* However, it went on to observe that there could be circumstances in which a claims administrator incurs an "independent duty to investigate and process the insure's claim in good faith." *Id.* It explained that when the actions of the claim administrator "are similar enough to those typically performed by an insurance company in claim administration and disposition," a special relationship – and thus, a tort-like duty – similar to that between insurer and insured may arise. *Id.* In discussing *Scott Wetzel Services*, the court emphasized that it was the nature of the claims administrator's activities, not just the statutory scheme, that warranted imposing a duty to the insured. *Id.* at 467 (emphasizing language from *Scott Wetzel Services* noting that it was, in part, "the adjuster's participation in the investigation and processing of claims" that gave rise to the duty).

The *Cary* court then turned to the particular facts. It noted a number of facts that indicated that the claims administrator "fulfilled virtually all of the functions normally performed by an insurance company in processing claims and determining whether the deliver insurance benefits."[2] *Id.* at 468. It noted particularly that the claims administrators "had a significant financial incentive to dely payment of benefits," as a result of its agreement to reinsure the insurer. In a footnote, it drew a distinction between the pervasive services offered by the claim administrator there with *Martinez v. Lewis*, 969 P.2d 213, 214 (Colo. 1998), in which the court

---

[2]The administrator in *Cary* had agreed to reinsure the self-insured employer for benefit payments between $75,000 and $1 million per insured. 68 P.3d at 464.

7

had declined to impose a duty of good faith on a physician performing independent medical evaluations as part of the claims adjustment process. The *Cary* court noted that "individuals who are merely involved in claims processing do not have a special relationship with the insured sufficient to create a duty of good faith and fair dealing [because they] do[ ] not perform many of the functions of an insurance company, and [have] no direct financial incentive to deny the insured's claim." 68 P.3d at 468 n. 8. The *Cary* court summarized its ruling by saying "When a third-party administrator performs many of the tasks of an insurance company and bears some of the financial risk of loss for the claim, the administrator has a duty of good faith and fair dealing to the insured in the investigation and servicing of the insurance claim." *Id.* at 469.

*Cary*, then, sets forth the facts that the Plaintiff must allege with regard to Defendant Davis in order to state a claim for a breach of the duty of good faith and fair dealing. He must assert facts that show that Defendant Davis was charged to perform the same types of tasks that an insurance company ordinarily does in servicing claims, and that Defendant Davis bore some financial risk in approving or denying a particular claim. Notably, these showings must be made as to Defendant Davis as an individual, not as an employee of American Family Insurance; after all, the Plaintiff relies upon Defendant Davis' individual citizenship, not the citizenship of American Family Insurance to defeat diversity jurisdiction here.

The Amended Complaint does not make such a showing. Paragraph 46 of the Amended Complaint merely contains a conclusory assertion of a "special relationship" existing between Defendant Davis and the Plaintiff, but contains no averments of <u>fact</u> from which the existence of such a special relationship could be ascertained. Paragraph 47 of the Amended Complaint asserts only that Defendant Davis did not advise the Plaintiff of his entitlement to enhanced PIP benefits,

8

even though she knew he would exceed his basic PIP coverage. Paragraph 48 contends that in or about December 2000, AFM requested that its claims administrators identify which insureds may be entitled to additional PIP coverage. Paragraph 49 asserts that Defendant Davis should have been aware that the Plaintiff could have received more benefits had the enhanced PIP coverage been afforded to him, and thus, that she was obligated to advise him as such. None of these allegations, individually or collectively, are sufficient to indicate that Defendant Davis performed the extensive, insurer-type duties necessary under *Cary* to confer upon her a duty to the Plaintiff. For example, the Plaintiff does not allege that Defendant Davis had the ability to grant or deny his claim for benefits, nor does he allege that Defendant Davis had a personal financial interest in the outcome of his claim. At best, the Plaintiff has only alleged facts that show that Defendant Davis was charged with ministerial tasks of supplying him with information about his coverage, and determining whether he would have been entitled to additional benefits were he to be extended enhanced PIP coverage. This is far short of the fairly high threshold set for liability in *Cary*, and much closer to the routine claims-handling activities that the Colorado Supreme Court found insufficient to create a duty in *Martinez*.

The Plaintiff's response contains relatively little discussion of his burden under *Cary*. By and large, the Plaintiff relies on irrelevant assertions that AFM and Defendant Davis had exclusive knowledge of AFM's prior failure to comply with Colorado's statutorily-mandated coverages, and the possibility of AFM thereafter extending additional benefits to certain insureds. These facts may be sufficient to demonstrate that Defendant Davis evidenced bad faith in her dealings with the Plaintiff, but fails to address the preliminary question of whether Defendant Davis owed any duty to the Plaintiff in the first instance. *Cary* defines the facts that create such a duty, and

9

the Plaintiff simply does not address those facts.  The Plaintiff does cite *Cary*, but for the proposition that a statutory and regulatory scheme – such as the Worker's Compensation scheme that it was discussing when examining *Scott Wetzel Services* – can create independent duties for claims adjusters.  The Plaintiff goes on to argue that the Unfair Claims Practices Act, C.R.S. § 10-3-1104 and the Colorado Auto Accident Reparations Act, C.R.S. § 10-4-701 *et seq.*, combine to create such a statutory and regulatory framework.  The Court need not address this argument in great detail, as nothing in those statutes creates a duty on claims administrators similar to the duty that *Scott Wetzel Services* found the Worker's Compensation scheme to create.

Accordingly, the Court concludes that, on the face of the Amended Complaint, the Plaintiff has not alleged a viable claim against Defendant Davis.  As such, the claim against Defendant Davis is dismissed, and the remaining alignment of the parties is sufficient to support diversity jurisdiction under 28 U.S.C. § 1332.  This is not to say, however, that the Plaintiff cannot possibly state a viable claim against Defendant Davis.  This case is still at the pleadings stage, and notwithstanding AFM's request for the alternative remedy of summary judgment, the Court declines to look beyond the pleadings at this time.  Arguably, the Plaintiff may be able to assert viable claims against Defendant Davis – whether under *Cary* or otherwise – that could survive a motion to dismiss and, in turn, strip this Court of subject matter jurisdiction over the action.  The Court will grant the Plaintiff a period of 20 days to file a Second Amended Complaint, consistent with Fed. R. Civ. P. 11, that states a viable claim against Defendant Davis.  Should the Plaintiff do so, the Court would likely remand the case pursuant to 28 U.S.C. § 1447(e).  Should the Plaintiff be unable to state a cognizable claim against Defendant Davis, or should he elect not to do so, this case will proceed in this Court solely against AFM.

The Court has considered the remaining arguments in the parties' papers, and finds them to be either procedurally deficient or without merit.

## **CONCLUSION**

For the foregoing reasons, AFM's Motion to Dismiss is **GRANTED**, and the claim in the Amended Complaint against Defendant Davis is **DISMISSED**. The caption of this case shall be amended to omit Defendant Davis. If the Plaintiff chooses to do so, he may file a Second Amended Complaint, and an accompanying motion seeking remand, within 20 days of the date of this Order, barring which, this case will proceed in this Court. The Plaintiff's Motion to Remand **(# 13)** and Motion to Strike **(# 17)** are **DENIED**.

Dated this 19th day of March, 2008

BY THE COURT:

*/s/ Marcia S. Krieger*

Marcia S. Krieger
United States District Judge